No. 31.—Job B. Hicks, plaintiff in error, *vs.* A. K. Ayer, defendant in error.

[1.] After a case has been submitted to a petit Jury, either party may withdraw it and confess judgment for the whole amount in controversy, reserving the liberty of appeal, with or without the consent of his adversary.

[2.] A exposed certain slaves to sale at public auction, which were knocked off to B. B, failing to comply with the terms of sale, agreed in writing, that the negroes might be re-sold at his loss and expense: *Held*, that to charge B, A would have to show that the second sale was consummated: *Held, also*, that B was liable for the difference in the two sales, notwithstanding A refused to let him have one of the negroes, bid off by him at the second sale, it appearing that he was resold to C on the same day for the same price at which he was bid off by B.

Assumpsit, in Muscogee Superior Court, tried before Judge Alexander, May Term, 1848.

The facts are found in the opinion of the Court.

Johnson & Williams, for plaintiff in error.

Thomas & Downing, for defendant, cited the following:

*Hotchkiss' Dig.* 600.   *Prince's Dig.* 426.   1 *Kelly's Rep.* 278–9. 1 *Chitty's Pleadings*, 514, 515, 518, 519.

*By the Court.*—Lumpkin, J. delivering the opinion.

Alpha K. Ayer instituted suit in the Inferior Court of Muscogee county, against Job B. Hicks, under the following circumstances : Ayer exposed to sale at public auction in the city of Columbus, on the 5th of January, 1847, four negroes, which were bid off by Hicks, namely : Jenny and child, at $530 ; Amelia, at $650 ; and Charles, at $405.   Hicks failed to comply with the terms of sale, and two days thereafter, executed and delivered to Ayer his written engagement, that said slaves might be re-sold on the twelfth of the same month, and that he would pay the loss and expense attending the re-sale.   The negroes were re-sold, at a loss of two hundred and seventy-eight dollars.   Charles being again knocked off to Hicks, at $235.   The defendant offered

to pay for Charles at his bid, but the plaintiff asked the defendant the price of his first bid, to wit, $405, but finally agreed to let Hicks take him at his last bid, which he refused to do ; and Charles was then sold to one Cromwell, for $235. The case was submitted to a jury in the Inferior Court, but ·before any verdict was rendered, the cause was withdrawn at the instance of the plaintiff, who confessed judgment to the defendant for cost, with liberty of appeal, under the sanction of the Court, the defendant objecting thereto. When the cause was called in the Superior Court, the defendant moved to dismiss the appeal, because the confession of judgment, upon which the same was founded, was made and rendered in the Inferior Court, without the consent, and against the protest of said defendant, as appears by the record accompanying said appeal. The Court annulled the application, and thereupon the defendant excepted.

In the argument of the cause, counsel for the defendant called the attention of the Court to this point of law, that if the defendant at the second sale, offered to take the boy Charles at the price for which he then bid him off, and the plaintiff refused to let him have him unless he would pay the price bid for him at the first sale, that then the defendant might abandon his contract, and consider the same as rescinded ; and that he was thereby discharged from his liability. The Court, in response to this suggestion, remarked to the jury, that whatever might be the law upon such a state of facts, as that to which its attention had been called, it must decline giving them any charge upon that point, there being no plea filed by the defendant setting up' such defence ; whereupon, the defendant excepted. The jury found a verdict for the plaintiff, for the difference. Two questions are presented for the consideration of the Court : First, should the appeal from the Inferior Court have been dismissed ? Second, was the charge sought, proper under the pleadings in the cause ?

[1.] The right of a party to confess judgment, is recognized by the law of the State. *Prince*, 427. It is established by immemorial usage.` What injury could it work in the present case ? After much reflection, none has occurred to us. It is a fundamental object with all Courts to expedite litigation. Why send this case back to another petit jury ? Why should any party complain, that his adversary has confessed to him, all that he claims ? Could a verdict give him any more ? Why trouble a

jury to try an issue of fact, which is not disputed? Or why not withdraw one which has been already submitted, if either party is willing to confess to the other, the whole matter in controversy? It may be objected, that a *first trial* might in this way be defeated, and the party would be less prepared to meet the appeal. But this end can be as well accomplished by submitting to a verdict in the first instance, without disclosing the testimony. The question, then, is exclusively between *confession and verdict ;* and the weight of the argument, both as to the saving of time and expense, is in favor of the former. To avoid a mere technical difficulty, the party confessing would do well always to reserve the right of appeal.

[2.] We see nothing in the pleadings, which would have deprived the defendant of the benefit of the instructions which he prayed. To recover the difference between the first and second sales, it was incumbent on the plaintiff to prove the two sales, Failing to do this, he had no case. His declaration very properly averred, that Charles, one of the negroes, was sold at the second auction, for two hundred and thirty-five dollars, and that the difference between the two sales of this negro, was one hundred and seventy dollars. It was not only material to make this allegation, but to support it by evidence. The writ tendered this issue ; and it was competent, we apprehend, for the defendant to deny this statement, and to insist that the testimony offered by the plaintiff himself, showed that his contract was not violated, inasmuch as the plaintiff had refused to deliver Charles at the price at which he was knocked off at the second sale. I repeat, that no right of action accrued, until the second sale was consummated. And the defendant had the right, under the *general issue,* to ask the Court to instruct the jury, that if they believed that the plaintiff had refused to let him have Charles, at the price he bid him off for at the second sale, unless he would pay the difference between the two sales, that he was released from his contract.

But has the defendant been damnified by this error? We think not. The testimony shews that Charles was re-sold to one Cromwell, at the sum of two hundred and thirty-five dollars, the price at which he was bid off by Hicks. The plaintiff proposes only to charge Hicks with the difference between the two sales. Had Charles been delivered to him, he would have been chargea-

ble with the one hundred and seventy dollars loss. As it is, no more is demanded of him. If Charles had been re-sold for less, the complaint would be well founded. As it is, Hicks may have his redress against the plaintiff, for refusing to deliver the boy. But we cannot see that this refusal constitutes any excuse, in law, for not paying the loss sustained on the re-sale of this slave. We are unwilling, therefore, to remand the cause for a re-hearing, especially as we are satisfied that justice has been done by the finding.

Judgment affirmed.